F I L E D
United States Court of Appeals
Tenth Circuit

AUG 29 2002

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHARLES L. RAKITY,

      Plaintiff-Appellant,

v.

DILLON COMPANIES, INC., a Kansas
corporation d/b/a King Soopers, Inc.,

      Defendant-Appellee.

No. 01-1484

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 99-WM-1475)**

Hugh S. Pixler of Gregson & Pixler, P.C., Denver, Colorado, for Plaintiff-
Appellant.

Edward J. Butler (Raymond M. Deeny with him on the brief) of Sherman &
Howard L.L.C., Colorado Springs, Colorado, for Defendant-Appellee.

Before **BRISCOE**, Circuit Judge**, BRORBY**, Senior Circuit Judge, and
**LUCERO**, Circuit Judge.

**BRORBY**, Senior Circuit Judge.

Charles L. Rakity, a grocery clerk at King Soopers, sued his employer, arguing the supermarket chain's failure to promote him violated the Americans with Disabilities Act. After determining Mr. Rakity did not have a covered "disability" under 42 U.S.C. § 12102(2), the district court granted King Soopers' summary judgment motion. On appeal, Mr. Rakity argues summary judgment was inappropriate because (1) material evidence indicates Mr. Rakity has "a record of" and was "regarded" by King Soopers as having an impairment that substantially limits one or more of his major life activities under 42 U.S.C. § 12102(2)(B) & (C), and (2) the district court's decision requiring him to present evidence King Soopers regarded him as disabled in establishing a prima facie case of discrimination violated the order of proof model set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Our jurisdiction arises pursuant to 28 U.S.C. § 1291. After careful consideration, we affirm the district court's order granting summary judgment to King Soopers.

**BACKGROUND**

This case focuses on two of King Soopers' grocery clerk job classifications: "All purpose clerk" jobs and "general grocery clerk" jobs. King Soopers' "all purpose clerks" work as checkers, grocery stockers, and produce clerks. While the essential job functions of all purpose clerk positions are in dispute, both

parties agree these positions normally require heavy lifting and repetitive tasks. For example, King Soopers states its grocery stocker position, which is classified as an all purpose clerk job, requires lifting from eleven to twenty-five pounds up to 60% of the time, twenty-six to forty pounds up to 40% of the time, forty-one to fifty pounds up to 60% of the time, and more than fifty-one pounds up to 20% of the time. In comparison, "general grocery clerks" receive less compensation than all purpose clerks, but may be assigned to jobs requiring less lifting, such as a service desk position.

King Soopers hired Mr. Rakity in 1976 and promoted him to an all purpose clerk classification in 1980. In subsequent years Mr. Rakity suffered from a variety of illnesses and injuries, some of which were sustained in work place accidents. For instance, Mr. Rakity obtained a hospital note with a "presumptive diagnosis" of "cold induced reactive airway disease." Records indicate Mr. Rakity used this note to obtain a job transfer to avoid work in the frozen foods section of the grocery store. In 1987, Mr. Rakity developed numbness and tingling in his hands from carpal tunnel syndrome. In early 1988, Mr. Rakity underwent corrective surgery on both arms. Mr. Rakity also reported pain in his shoulder that led to another 1988 surgery.

By 1988, Mr. Rakity's medical treatment had already created an extensive and at times unflattering record. For instance, one doctor specializing in Occupational Health and Rehabilitative Medicine wrote:

> My impressions are that Charles Rakity is somewhat habituated to the workers' compensation system; I say this partly because of his requests for benefits which he has repeatedly [made] which include:
>
> 1. He has asked me to recommend a job change.
>
> 2. He has asked me to authorize him off for a week in May so that he can go to Las Vegas for his "psychological health".
>
> 3. He has asked me to in writing recommend a whirlpool or hot tub which he has priced at between $2,000 and $4,000. He justifies this by stating that one of his physicians in the past has recommended that he soak in hot water for 45 minutes a day.
>
> At any rate, I believe that Mr. Rakity is not nearly as impaired as he believes that he is and that he will be returning to full duty at some time soon.

Similar statements appear throughout Mr. Rakity's medical records.

In 1989, Mr. Rakity began a second job, with a small whirlpool distribution and supply company called All City Pools. In this position, Mr. Rakity performed a variety of duties including selling spas to the public, running the store cash register, waiting on customers, answering telephone calls, completing paperwork, cleaning display spas on a daily basis, and helping deliver spas to residential

homes.  Mr. Rakity was also responsible for stocking All City Pools shelves with ten, twenty-five, forty, and fifty pound packages of whirlpool and spa chemicals. Mr. Rakity held this position from 1989 until 1997.

In January of 1992, Mr. Rakity received a $25,000 Workers Compensation settlement check for his 1987 shoulder and carpal tunnel injuries.  Mr. Rakity next sought additional compensation from the state of Colorado, applying for permanent total disability benefits under the Colorado Worker's Compensation Act on March 13, 1992.  Although he applied for permanent total disability benefits, Mr. Rakity admits he was working as a night crew grocery stocker and was classified as an all purpose clerk.  In June 1992, Mr. Rakity reported re-injuring his shoulder when stopping a "U-boat" cart used to move groceries around the store.  In the aftermath of this injury, doctors temporarily restricted Mr. Rakity to lifting five pounds.  Mr. Rakity then underwent a second shoulder surgery in October, and by November of 1992 had returned to full time work unloading groceries weighing over forty pounds from delivery trucks and stacking them throughout the supermarket.  The next month, Mr. Rakity's surgeon, Dr. Evans, could find no medical cause for any problems with Mr. Rakity's hands or neck and "there [was] nothing organically wrong with his cervical spine."  Dr. Evans' records also note Mr. Rakity "requested multiple times today to be kept on

a permanently restricted duty [but] I cannot medically justify that."

Mr. Rakity reported another injury in October 1993. This time, Mr. Rakity explained he hurt his back while lifting two jugs of water. Dr. Scott Primack, a doctor specializing in physiatrics, found evidence of a herniated disc in the cervical spine and a degenerative disc in his thoracic spine. In November 1993, Dr. Primack also recommended Mr. Rakity not return to his all purpose clerk position because lifting would put Mr. Rackity and others at risk. In January 1994, Dr. Primack restricted Mr. Rakity to lifting ten pounds frequently and fifteen pounds occasionally. After an extensive functional capacity evaluation, Dr. Primack determined it would be safe for Mr. Rakity to work in a service desk job, classified as a general grocery clerk position, since that job requires little heavy lifting. One week later, Mr. Rakity applied to the Social Security Administration for Social Security Disability Benefits, claiming to be incapable of performing any meaningful work. In denying his application, the Social Security Administration determined Mr. Rakity's condition was "not severe enough to keep [him] from working." The Social Security Administration explained Mr. Rakity should "not do any heavy lifting, strenuous labor, or long periods of repetitive motion," but he "should be capable of performing light duty work." During this period, Mr. Rakity remained employed at his second job with All City Pools.

After his disability benefits application was denied, Mr. Rakity returned to King Soopers and began working as a general grocery service desk clerk.

While his application for disability benefits from the federal government was still pending, Mr. Rakity also filed a discrimination charge with the Equal Employment Opportunity Commission. Unlike his simultaneous disability benefit application, Mr. Rakity's discrimination charge alleged he could complete the essential job functions of his position with reasonable accommodation from King Soopers. After receiving a right to sue letter from the Equal Employment Opportunity Commission, Mr. Rakity filed an Americans with Disabilities Act suit in October 1996.

By 1996, Mr. Rakity reported considerable improvement in his physical condition.[1] In May 1996, Mr. Rakity again visited Dr. Primack who revised his

---

[1] Mr. Rakity's deposition testimony is illustrative:

Q: Just at the time that you filed your lawsuit in '96, could you tell me what life activities you were limited in?
A: Limited to, income. I had a house payment. I had some credit card debt. It affected my social [life]. My savings were down to a minium, $100 a week as an [all purpose clerk] down to $10, just my whole life activities sort of grounded down.
Q: What were your physical limitations in 1996 –
A: My physical?
Q: – that caused you to consider yourself disabled?

lifting restrictions to lifting up to twenty pounds frequently and forty pounds occasionally. Dr. Primack also restricted Mr. Rakity's repetitive motion to one hour at a time with a fifteen minute break of some non-repetitive activity in between. Following this evaluation, Joseph Brink, a King Soopers Workers Compensation specialist, exchanged a series of letters with Dr. Primack concerning Mr. Rakity's ability to continue performing as a general grocery service desk clerk. From this correspondence, Mr. Brink determined the service desk position exceeded Mr. Rakity's capabilities because it required constant repetitive motion. In June 1996, Mr. Brink filed a request with King Soopers' Employment Services Center asking it to find a different job for Mr. Rakity that would not exceed his restrictions. Nevertheless, Mr. Rakity returned to work as a general grocery clerk as part of an October 1996 deal settling the Americans with Disabilities Act lawsuit filed that month. Also pursuant to this agreement, King Soopers issued a second settlement check to Mr. Rakity – once again for $25,000.

---

A: I don't think I considered myself disabled.
Q: Oh, you didn't, okay.
A: No.
Q: So even in 1996 you didn't have any physical limitations that you considered to be substantially limiting you in any way?
A: After that settlement agreement and doing the [all purpose clerk] work, no.

Three months later, Mr. Rakity applied for a promotion. Mr. Rakity wanted to return to the more lucrative all purpose clerk classification that requires heavy lifting and constant repetitive motion. Stephanie Bouknight, a King Soopers labor relations manager, and Marc Gallegos in King Soopers' risk management department, refused to allow the promotion. Both explained all King Soopers' all purpose clerk positions exceeded Dr. Primack's lifting and repetitive motion restrictions.

In December 1997, Mr. Rakity reported another injury, this time from a car accident. After a month off from work, Mr. Rakity returned and continued in his general grocery service desk position. Mr. Rakity has continued to seek a promotion to an all purpose clerk classification. However, King Soopers continues to deny this request, citing Dr. Primack's medical restrictions. In support of his efforts to be promoted, Mr. Rakity has visited several other doctors and occupational therapists, all of whom have found Mr. Rakity is capable of performing the duties of an all purpose clerk. For instance, Dr. Charles Hamlin, a hand surgeon, concluded Mr. Rakity has the physical ability to work in the construction trade, to use precision equipment eight hours a day as a dentist, and work as any type of grocery clerk. Explaining Mr. Rakity's abilities, the doctor said, "[a]nything you could hypothesize, professional wrestling, all-purpose clerk,

I would say go for it."

The present dispute began October 14, 1997, when Mr. Rakity filed another charge with the Equal Employment Opportunity Commission alleging disability discrimination. The Equal Employment Opportunity Commission issued a notice of right to sue in May 1999, and Mr. Rakity filed this suit. During the course of this lawsuit, Dr. Primack performed another functional capacity evaluation on Mr. Rakity. Dr. Primack continues to maintain Mr. Rakity would be injured if he performed the essential functions of an all purpose clerk. Dr. Primack's current restrictions limit Mr. Rakity to lifting up to forty pounds occasionally and ten to fifteen pounds frequently. Dr. Primack also continues to advise that for every hour of repetitive motion, Mr. Rakity should perform fifteen minutes of rotational work where he avoids the same repetitive motions.

After extensive discovery, King Soopers submitted a motion for summary judgment. In granting the motion, the district court concluded Mr. Rakity did not present any evidence indicating he has a disability under the Americans with Disabilities Act. On appeal, Mr. Rakity concedes he does not have an actual physical impairment that rises to a protected disability. Nevertheless, Mr. Rakity contends he is still disabled for purposes of the Americans with Disabilities Act

because he has a record of disability and because King Soopers regarded him as disabled.

## DISCUSSION

### I. "Disability" Under the Americans With Disabilities Act

Mr. Rakity argues the district court erroneously overlooked material facts that indicate Mr. Rakity has a "disability" under 42 U.S.C. § 12102(2). Specifically, Mr. Rakity asserts he has "a record of" and has been "regarded as" having an impairment that substantially limits the major life activities of performing manual tasks, lifting, reaching, and working. We review de novo the district court's grant of summary judgement. *Sorensen v. University of Utah Hosp.*, 194 F.3d 1084, 1086 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable jury could find in favor of the non moving party on the evidence presented. *Id.*

Where the nonmoving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case to survive summary judgment.

*Sorensen*, 194 F.3d at 1086 (quotation marks, alterations and citations omitted).

The Americans with Disabilities Act prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... advancement." 42 U.S.C. § 12112(a). Under the Act, a "disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A major life activity is a "basic activity that the average person in the general populaltion can perform with little or no difficulty.... The touchstone for determining an activity's inclusion under the statutory rubric is its significance." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.) (quotation marks, alterations and citations omitted), *cert. denied*, 528 U.S. 811 (1999). "Major life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working." *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495-96 (10th Cir. 2000). We analyze only

the major life activity or activities asserted by the plaintiff. *Id.* at 496.

>In general,
>
>[t]he three factors that should be considered when determining whether an impairment substantially limits a major life activity are: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact, of or resulting from the impairment."

*Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943 (10th Cir. 1994) (quotation marks and alterations omitted), *cert. denied*, 513 U.S. 1152 (1995). The Supreme Court and the Equal Employment Opportunity Commission have provided more specific guidance with respect to the major life activities of performing manual tasks and working. "[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 34 U.S. 184, ___, 122 S. Ct. 681, 691 (2002). In the case of the major life activity of working, "the term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having

-13-

comparable training, skills and abilities." 29 C.F.R. § 1630.2 (j)(3)(i).[2] Whether

a given impairment substantially limits a major life activity are determined on an

individualized case-by-case basis. *Pack*, 166 F.3d at 1304. We also take into

account the effects of mitigating or corrective measures when judging whether a

person is substantially limited in a major life activity. *Sutton v. United Airlines,*

*Inc.*, 527 U.S. 471, 482 (1999). Mr. Rakity concedes he does not currently have

an actual physical or mental impairment which substantially limits one of his

major life activities under § 12102(2)(A). Rather, Mr. Rakity maintains he has a

record of such an impairment under subsection (B) and King Soopers regarded

him as having such an impairment under subsection (C). 42 U.S.C. § 12102(2)(B)

---

[2] The Equal Employment Opportunity Commission also suggests evaluating the following additional factors when considering the major life activity of working:

> (A) The geographical area to which the individual has reasonable access;
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

& (C).

## A. *Record of Substantial Limitation*

Mr. Rakity argues past medical and employment documents showing impairments to his hands, wrists, shoulders, and back demonstrate a record of substantial limitation in performing manual tasks, lifting, reaching, and working. To have a qualifying record of impairment, "a plaintiff must have a history of, or have been misclassified as having, an impairment that has substantially limited a major life activity." *Sorensen*, 194 F.3d at 1087. The Equal Employment Opportunity Commission has explained "[t]he intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability." 29 C.F.R. pt. 1630, App. § 1630.2(k).

The most favorable interpretation of Mr. Rakity's medical and employment records does not suggest he is substantially impaired in performing manual tasks. All of Mr. Rakity's arguments on appeal address his ability to fulfill various grocery store clerk duties. For instance, Mr. Rakity points to a 1993 doctor's letter questioning Mr. Rakity's ability to continuously stack small grocery items on store shelves. However, "[w]hen addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is

unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job." *Toyota Motor Mfg.*, 122 S. Ct. at 693. "[H]ousehold chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives and shouldl [be] part of the assessment of whether [a plaintiff is] substantially limited in performing manual tasks." *Id.* The manual activity of continuously shelving groceries is not centrally important to most people's daily lives. Mr. Rakity has presented no records or documents indicating his impairments are severe enough to prevent basic daily manual activities such as household chores, bathing himself, or brushing his teeth. In fact, two occupational therapists recently found Mr. Rakity's "normal activities of daily living are not impaired." Moreover, when applying to the Social Security Administration for permanent disability benefits in February 1993, Mr. Rakity admitted he did "light housework, such as cleaning and laundry," "prepare[d] [his] own meals," and grocery shopped "[o]nce or twice a week."

Mr. Rakity's medical and employment records also fail to demonstrate a triable issue of fact concerning his ability to lift. After Mr. Rakity's 1992 "U-Boat" accident, doctors temporarily restricted Mr. Rakity to lifting five pounds. As a result, Mr. Rakity underwent minor surgery on his shoulder. With this

corrective measure, it is undisputed that by November 1992 Mr. Rakity was able to work full time unloading groceries weighing over forty pounds from King Soopers' delivery trucks. In December 1992, Dr. Evans found the surgery "quite obviously improved [Mr. Rakity's] shoulder function." Dr. Evans also found no medical cause for Mr. Rakity's hand, neck, or back problems and refused to recommend permanent restrictions despite Mr. Rakity's multiple requests.

Mr. Rakity's October 1993 water jug accident also led to short-term lifting restrictions. In 1994, a different doctor, Dr. Primack, restricted Mr. Rakity to lifting ten pounds frequently and fifteen pounds occasionally. Once again, the impairment proved temporary and not severe. After receiving a second settlement in 1996, again for $25,000, Mr. Rakity agreed he "didn't have any physical limitations that [he] considered to be substantially limiting in any way." By 1996, Dr. Primack's medical records indicate Mr. Rakity's shoulder ached after excessive motion, "but this [did] not appear to impede [Mr. Rakity's] job performance." Morever, it is undisputed Mr. Rakity worked a second job at All City Pools from 1989 to 1997. During this period, Mr. Rakity regularly lifted ten, twenty-five, forty, and fifty pound packages of whirlpool and spa chemicals while stocking shelves in this second job. Mr. Rakity also admits he helped deliver spas and whirlpools to residences for All City Pools.

Currently, Mr. Rakity's most restrictive lifting limitation permits him to lift up to forty pounds occasionally and ten to fifteen pounds frequently. We recently held medical records with a similar forty pound lifting restriction do not establish a history of substantial limitation on the life activity of lifting. *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240-41 (10th Cir. 2001). Our sister circuits have found even more stringent lifting restrictions do not rise to a substantial limitation on the major life activity of lifting. *See, e.g., Pryor v. Trane Co.*, 138 F.3d 1024, 1025 n.2 (5th Cir. 1998) (upholding jury verdict that found twenty pound repetitive lifting restriction from back injury was not substantially limiting); *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir. 1997) (holding restriction limiting frequent lifting to ten pounds due to carpal tunnel syndrome was not substantially limiting); *Wooten v. Farmland Foods*, 58 F.3d 382, 384, 386 (8th Cir. 1995) (holding ten to twenty pound lifting restriction with minimal overhead reaching due to carpal tunnel syndrome in hands and tendinitis in shoulder was not substantially limiting); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 541 (9th Cir. 1997) (holding twenty-five pound repetitive lifting restriction from back and neck injury was not substantially limiting). Mr. Rakity's lifting restrictions have been relatively moderate in nature and severity, short in duration, and do not suggest a severe long term impact.

Mr. Rakity's briefs on appeal do not explain his history of limitation in reaching, nor do they point to any records explicitly discussing this impairment. Although "[w]e view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, ... that party must *identify* evidence which would require submission of the case to a jury." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1402 (10th Cir. 1997) (emphasis added; quotation marks and citations omitted). Nevertheless, our review of the approximately one thousand pages of record and argument submitted on appeal reveals no records which indicate a substantial impairment in the major life activity of reaching. Mr. Rakity's carpal tunnel impairment to his hands and wrists has limited his ability to perform repetitive movements over extended durations. But, these records do not indicate an impairment limiting Mr. Rakity's ability to reach. Following his June 1992 and December 1993 accidents, doctors found Mr. Rakity had a normal or nearly normal range of motion in his upper extremities and shoulders. In 1998, Dr. Brainbridge stated Mr. Rakity should limit far forward or overhead reaching because of injuries from his 1997 car accident. Nevertheless, the same record indicates Mr. Rakity is capable of far forward and overhead reaching on an "occasional basis." Thus, the severity and long term impact of Mr. Rakity's reaching impairment are only minor. Under these circumstances, Mr. Rakity has not demonstrated a triable issue of fact concerning his ability to reach.

Finally, Mr. Rakity's medical and employment records do not show a substantial limitation in the major life activity of working. Mr. Rakity's record of missed work due to surgery, short hospital stays, and rehabilitation does not, by itself, imply he has a record of substantial limitation in working. *See, e.g., Sorensen*, 194 F.3d at 1087) (five day hospital stay from multiple sclerosis did not create record of substantial limitation where there was no long term impact on major life activity). Moreover, a history of light duty restrictions does not necessarily demonstrate a record of substantial limitation in working. *See Gutridge v. Clure*, 153 F.3d 898, 901-02 (8th Cir. 1998) (five separate surgeries, numerous temporary lifting restrictions, and permanent forty-five pound lifting restriction from carpal tunnel syndrome did not establish triable record of substantial limitation), *cert. denied*, 526 U.S. 1113 (1999). We have previously relied on a Second Circuit decision that held a recorded impairment was not substantially limiting where a police officer was hospitalized for a month, remained at home for six months, and was restricted to light duty for seven years after returning to work. *Pack*, 166 F.3d at 1305 (citing *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998)). Mr. Rakity is less limited than the police officer in *Colwell*. In fact, records show Mr. Rakity remained employed at a second job throughout the period of time in question. At his All City Pools job, Mr. Rakity sold spas to the public, ran the store cash register,

waited on customers, answered telephone calls, completed paperwork, cleaned display spas on a daily basis, stocked heavy chemical containers on store shelves, and helped deliver spas to residential homes. These work activities tend to show Mr. Rakity does not have a record of substantial impairment in the major life activity of working. We also note on at least one occasion Mr. Rakity appears to have actively concealed his second job at All City Pools from those attempting to resolve his employment related claims.[3] In 1997 Mr. Rakity's own doctor, Dr. Hamlin, explained Mr. Rakity has no physical limitations at all. Dr. Hamlin opined Mr. Rakity is physically capable of performing in a great variety of occupations including construction worker, dentist, all-purpose clerk, even "professional wrestl[er]."

Mr. Rakity does present employment records from 1996 when King Soopers

---

[3] At his March 14, 2000 deposition, Mr. Rakity admitted to working at All City Pools from 1989 to 1997. But, when applying to the Social Security Administration for permanent disability benefits on July 14, 1994, Mr. Rakity did not disclose his then current employment at All City Pools. The vocational report section of the disability benefit application asks benefit applicants to "list all the jobs you have had in the last 15 years." Mr. Rakity only listed his job as a retail grocery clerk at King Soopers. The application also states "anyone making a false statement or representation of a material fact for use in determining a right to payment under the Social Security Act commits a crime punishable under Federal law." We are puzzled Mr. Rakity has not been held accountable for this discrepancy.

determined he was no longer qualified to work as a clerk at the grocery store service desk. At this point, Dr. Primack determined for every sixty minutes of repetitive motion, Mr. Rakity should do fifteen minutes of "rotational-type work in which he is not incurring the same type of repetitive motion tasks" to avoid the risk of exacerbating his carpal tunnel syndrom. In 1993, Dr. Primack also recommended Mr. Rakity no longer stock even small groceries, such as candy, because of the risk of further injury. From this evidence, Mr. Rakity claims King Soopers determined he was "unable to perform *any* job." However, this assertion is contradicted by King Soopers' written offer to conduct "both internal and external job reassessments in order to identify positions that would be employment alternatives." It is also undisputed Mr. Rakity continued to perform a broad range of tasks for All City Pools. Moreover, the Social Security Administration's investigation determined Mr. Rakity should be of performing light duty work. Finally, Mr. Rakity has not provided a single document or record helpful in addressing his "vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which [he] would also be disqualified." *Bolton*, 36 F.3d at 944. Thus, the most favorable interpretation of Mr. Rakity's history does not show a triable issue regarding a record of a substantial limitation on his ability to work.

Under these circumstances, the district court did not err in finding Mr. Rakity failed to present a genuine issue of material fact concerning whether he has a "record of" substantial limitation in the life activities of performing manual tasks, lifting, reaching, or working.

**B.  *Regarded as Substantially Limited***

Mr. Rakity next argues he qualifies for protection under the Americans with Disabilities Act because King Soopers regarded him as having a substantial limitation in his major life activities under § 12102(2)(C).  The Supreme Court has explained there are two ways an individual may qualify for protection under this subsection:  "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489. "These misperceptions often result from stereotypic assumptions not truly indicative of individual ability." *Id.* (quotation marks, alterations and citations omitted).  Nevertheless, an employer "is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Id.* at 490-91.  Under this rule Mr. Rakity can only survive summary judgment if he presents triable evidence indicating King Soopers regarded him as

substantially limited in one or more of his affected major life activities of performing manual tasks, lifting, reaching, or working.

Initially, no evidence indicates King Soopers mistakenly believed Mr. Rakity could not perform manual tasks that are centrally important to most people's daily lives. Mr. Rakity presents no evidence regarding King Soopers beliefs with respect to centrally important tasks such as household chores, bathing, or brushing his teeth.

Moreover, the undisputed evidence indicates King Soopers regarded Mr. Rakity as impaired in his ability to lift, but only to the extent indicated in his medical and employment records. For instance, Mr. Rakity relies on correspondence between Mr. Brink and Dr. Primack concerning Mr. Rakity's lifting and repetitive motion restrictions. But, in these letters, Mr. Brink was only attempting to clarify whether Dr. Primack's restrictions precluded Mr. Rakity from certain grocery store clerk activities. The focus of these letters is upon Dr. Primack's restrictions, which we have already determined do not show an impairment which rises to a substantial limitation in the activity of lifting. Recognition of Dr. Primack's restrictions does not by itself imply King Soopers regarded Mr. Rakity as substantially limited in his major life activities. There is

simply no evidence that suggests Mr. Brink disregarded Dr. Primack's medical evaluation and substituted his own judgment about how much Mr. Rakity could lift. On the contrary, King Soopers' perception of Mr. Rakity "was not based on speculation, stereotype or myth, but on the doctor's written evaluations of [Mr. Rakity's] condition." *Lusk*, 238 F.3d at 1242.

Mr. Rakity also points to a confusing passage from the deposition of Mr. Brendlinger, a manager who supervised Mr. Rakity at a King Soopers store location. Mr. Rakity argues Mr. Brendlinger stated he believed Dr. Primack's restrictions precluded Mr. Rakity from lifting any weight at all, even as little as zero to ten pounds. Mr. Rakity's reliance on this statement is misplaced for several reasons. Initially, it is not clear from the record on appeal this is what Mr. Brendlinger intended to say. Mr. Rakity only provides a short excerpt of the deposition transcript in the record on appeal, which limits our ability to determine the context of Mr. Brendlinger's statement. Our rules require a party asserting an issue "provide a record sufficient for considering that issue." 10th Cir. Rule 10.3(B). Moreover, Mr. Brendlinger later clarified he merely intended to say Mr. Rakity was not allowed to perform essential job functions listed for some clerk positions which were not within Mr. Rakity's current job classification. Mr. Brendlinger explained, "[i]n no way did I state or intend to imply that my

testimony in this regard was based on my personal knowledge or belief I had regarding [Mr. Rakity's] physical abilities." Under these circumstances we are not persuaded Mr. Brendlinger's comments raise a genuine issue of material fact.

Even if Mr. Brendlinger did believe Mr. Rakity was not capable of any lifting at all, this is immaterial, since Mr. Brendlinger was not responsible for making the decision to deny Mr. Rakity's promotion request. The undisputed evidence indicates Stephanie Bouknight, a labor relations manager, and Marc Gallegos, a risk management manager, made the decision to refuse to promote Mr. Rakity. Mr. Rakity cites no legal authority and makes no factual argument explaining how the views of a non-decision maker, such as Mr. Brendlinger, could prove King Soopers regarded him as disabled for purposes of the Americans with Disabilities Act. *Cf. Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) (holding administrative staff member's beliefs regarding plaintiff's back injury were not attributable to employer where staff member had no authority to make employment decisions). In comparison, Ms. Bouknight and Mr. Gallegos refused to promote him because Dr. Primack's lifting restrictions and the essential job functions of the position were incompatible. This decision was made within the employer's freedom to prefer some physical characteristics over others, provided those characteristics do not substantially limit a major life

activity. *Sutton*, 527 U.S. at 490-91. Since Dr. Primack's restrictions are not so limiting and since the decision to refuse Mr. Rakity's promotion request was based upon those restrictions, the allegedly more severe views of Mr. Brendlinger are not material.

With respect to the life activity of reaching, Mr. Rakity again fails to make a specific argument or point to any evidence at all. There is simply no evidence in the record on appeal which would require a trial concerning King Soopers' beliefs about Mr. Rakity's ability to reach.

Mr. Rakity does present evidence indicating King Soopers believed Mr. Rakity was impaired in his ability to work. However, King Soopers' "belief that [Mr. Rakity] could no longer perform a job that required lifting in excess of [his] capabilities does not mean that [King Soopers] regarded [him] as disabled." *Lusk*, 238 F.3d at 1241. King Soopers' continuing willingness to employ Mr. Rakity in his current general grocery clerk service desk position amounts to undisputed evidence King Soopers does not regard Mr. Rakity as unable to perform a broad class of grocery clerk jobs. Mr. Rakity's interpretation of the record requires the absurd conclusion King Soopers believes Mr. Rakity is incapable of performing the job which he currently performs. Thus, there is no genuine issue regarding

whether King Soopers mistakenly believed Mr. Rakity's impairment rose to a substantial limitation on his ability to work.

Therefore, we hold Mr. Rakity has also failed to demonstrate a genuine issue of material fact concerning whether King Soopers mistakenly regarded him as substantially limited in the major life activities of performing manual tasks, lifting, reaching, or working.

## II.  The *McDonnell Douglas* Burden Shifting Framework

Next, Mr. Rakity argues requiring him to present evidence King Soopers regarded him as disabled in establishing his prima facie case "amount[s] to an improper collapse of the *McDonnell Douglas* order of proof model."  Mr. Rakity explains "evidence of 'regarded as' disability [should] be properly treated at the pretext stage of the analysis where the issue of the employer's intent is appropriately addressed."  We disagree.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), the Supreme Court set out an analytical framework for allocating the burden of proof in Title VII employment discrimination cases.  We subsequently adapted this framework to Americans with Disabilities Act disability discrimination cases.

*Morgan v. Hilti, Inc*, 108 F.3d 1319, 1323 (10th Cir. 1997). In the context of summary judgment, the *McDonnell Douglas* framework requires a plaintiff to "raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Morgan*, 108 F.3d at 1323 (citations omitted). To establish a prima facie case of disability discrimination, Mr. Rakity is required to show (1) he has a "disability" within the meaning of the Americans with Disabilities Act; (2) he was qualified, with or without reasonable accommodation, to perform the essential job functions of the position he sought; and (3) his employer refused the promotion under circumstances which give rise to an inference the decision was based on his disability. *Id.*

> After establishment of a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision. If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – *i.e.*, unworthy of belief. Demonstrating pretext gets plaintiff over the hurdle of summary judgment.

*Id.* (quotation marks and citations omitted).

The *McDonnell Douglas* framework was "originally developed to determine the existence of intentional discrimination in violation of Title VII." *Randle v. City of Aurora*, 69 F.3d 441, 450 (10th Cir. 1995). The purpose of the framework is to allow an inference of discriminatory animus from the simple showing of

-29-

pretext. *Id.* at 451. Where an inference of discrimination is not at issue, such as where the "the employer admits that the disability played a prominent part in the decision, ... the burden-shifting framework may be unnecessary and inappropriate." *Morgan*, 108 F.3d at 1323 n.3 (citations omitted).

Requiring Mr. Rakity to present triable evidence that King Soopers regarded him as disabled in establishing his initial prima facie case is consistent with the purpose and function of both the *McDonnell Douglas* framework and the Americans with Disabilities Act. Whether King Soopers regarded Mr. Rakity as disabled and whether King Soopers discriminated on the basis of that disability are separate legal questions. The *McDonnell Douglas* framework was designed to address the difficulties of proving the existence of discrimination, not the existence of a disability or a perceived disability. The framework is only necessary where a defendant claims the adverse employment action was made for reasons other than the plaintiffs membership in a protected class. *White v. York Int'l Corp.*, 45 F.3d 357, 361 n.6 (10th Cir. 1995). In this case, King Soopers freely admits the decision not to promote Mr. Rakity was made because of Mr. Rakity's lifting restriction. Thus, it is undisputed King Soopers is "discriminating" on the basis of Mr. Rakity's impairment. The Supreme Court has explained this is permissible so long as Mr. Rakity's impairment is not severe

enough to constitute a protected disability. *Sutton*, 527 U.S. at 490. Here, the *McDonnell Douglas* method of inferring discrimination is inappropriate since the relevant inference is undisputed.

Mr. Rakity's reliance on *Ross v. Campbell Soup Co.*, 237 F.3d 701 (6th Cir. 2001), is misplaced. In that case, the Sixth Circuit held evidence showing an employer's proffered reason for an adverse employment decision is pretextual *may* also tend to show the employer regarded the employee as disabled. *Id*. at 708. Mr. Rakity interprets *Ross* to mean the issue of pretextually concealed discrimination and the issue of "regarded as" disabled should be treated as one and the same. This proposed modification of the *McDonnell Douglas* framework would open the protected class to individuals who neither have an actual disability nor can even present triable evidence their employer believed they have a disability. We do not think the Sixth Circuit intended such an interpretation, and if it did, we decline to follow it.

The facts Mr. Rakity refers to as pretext evidence do not amount to a genuine issue of material fact concerning whether King Soopers regarded Mr. Rakity as disabled. For instance, Mr. Rakity presents evidence showing King Soopers disregarded the doctors who opined Mr. Rakity is physically capable of

performing all purpose clerk duties. If anything, this evidence would tend to show King Soopers did not regard Mr. Rakity as disabled, since Mr. Rakity's own physicians disabused King Soopers of this notion. Mr. Rakity also asserts the physical job requirements which exceeded Dr. Primack's lifting restriction were not essential job functions and were therefore amenable to reasonable accommodation. Even if we assume King Soopers disingenuously portrayed the all purpose clerk position as more physically demanding than it actually was, it does not follow King Soopers believed Mr. Rakity was disabled. At best, these facts only show King Soopers' explanation for refusing a promotion – namely, that Mr. Rakity was unqualified – was mere pretext. Just because King Soopers may have known Mr. Rakity is actually qualified, it does not follow King Soopers believed Mr. Rakity was also disabled. Accordingly, we are unpersuaded the district court's granting of King Soopers' summary judgment motion "collapse[d]" the *McDonnell Douglas* burden-shifting framework.[4]

---

[4] Mr. Rakity also argues the district court collapsed the McDonnell Douglas order of proof in its resolution of his "record of disability" claim by declining to consider medical and employment records made prior to 1996. The district court explained it was undisputed King Soopers relied only on Dr. Primack's 1996 restrictions. Justifying its disregard of earlier records, the district court focused on Equal Employment Opportunity Commission interpretive guidance stating the § 12102(2)(B) record of disability definition "is satisfied if a record *relied on* by an employer indicates that the individual has or has had a substantially limiting impairment." 29 C.F.R. pt. 1630, App. § 1630.2(k) (emphasis added). In comparison, at least one court has stated "a 'record of impairment' claim under § 12102(2)(B) requires proof that the employer *was*

In conclusion, Mr. Rakity has not presented triable evidence of either a "record of" substantial limitation under § 12102(2)(B), or of having been "regarded as" suffering from substantial limitation under § 12102(2)(C).[5] Moreover, summary judgment on behalf of King Soopers is consistent with the *McDonnell Douglas* burden shifting framework. For these reasons, the district court's order granting summary judgment is **AFFIRMED.**

---

*aware* of the record in question. *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 510 n.8 (7th Cir. 1998) (emphasis added). We need not resolve these issues because we affirm for reasons other than those given by the district court. "We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994). Unlike the district court, we have considered all the records of impairment in the record on appeal, including those made prior to 1996. None of these records presents a triable issue of fact regarding whether Mr. Rakity has a record of a substantial limitation in a major life activity. For this reason, we need not resolve whether an employer must only be "aware of" an employee's history of impairment or whether the employer must "rely on" that history. Moreover, we need not explore how an employer's mental state with respect to a history of disability relates to the *McDonnell Douglas* burden shifting framework.

[5] King Soopers presents five alternative theories upon which it urges us to affirm the district court's judgment. Because Mr. Rakity has not presented triable evidence of a "disability" under § 12102(2) we need not discuss these alternative arguments.