Carl E. HARMON, Plaintiff,

v.

SPRINT UNITED MANAGEMENT
CORPORATION, Defendant.

No. CIV.A. 02–2126–GTV.

United States District Court,
D. Kansas.

May 23, 2003.

Jeannie M. DeVeney, Katherine A. Hansen, Spencer, Fane, Britt & Browne, Overland Park, KS, Patrick F. Hulla, Overland Park, KS, Rebecca Arlene Ware, Wichita, KS, for Plaintiff.

William L. Fry, Tulsa, OK, for Plaintiff.

## *MEMORANDUM AND ORDER*

VANBEBBER, Senior District Judge.

*Pro se* Plaintiff, Carl E. Harmon, brings this case alleging that Defendant, Sprint United Management Corporation, discriminated against him because of his disability and failed to reasonably accommodate him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* The case is before the court on Defendant's motion for summary judgment (Doc. 40) and Defendant's motion to exclude expert testimony (Doc. 42).[1] For the

---

1. On April 29, 2003, the court issued an order to show cause why Plaintiff had not yet responded to either of Defendant's motions (Doc. 66). Plaintiff responded to the court's order on May 5, 2003 (Doc. 67), and attached thereto his responses to the motions. The court finds that Plaintiff has shown good cause for his failure to timely respond, and his responses to the motions will be considered herein by the court.

reasons set forth below, Defendant's motion for summary judgment is granted and its motion to exclude expert testimony is denied as moot.

## I. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.*

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party." *Black Hills Aviation, Inc. v. United States,* 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

In addition, the District of Kansas Local Rules require that a party moving for summary judgment commence the memorandum or brief in support of the motion "with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists." D. Kan. Rule 56.1(a). "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id.* Here, Defendant has complied with Local Rule 56.1(a) by setting forth a concise statement of material facts as to which it contends no genuine issues exist. Plaintiff has not attempted to controvert any of the facts outlined by Defendant. Therefore, the facts advanced by Defendant in its memorandum in support of its motion for summary judgment are deemed admitted for purposes of this opinion.

## II. FACTUAL BACKGROUND

From 1996 through November 19, 1999, Plaintiff provided computer programming services to Defendant as a contractor through his employer, Computer Task Group ("CTG"). Jeff Woods, an employee of Defendant, was Plaintiff's Lead, or supervisor, during that period of time. Mr. Woods's supervisor was Keith Robertson, a Systems Development Manager in the Information Services Systems Development ("ISSD") Department of Defendant's Local Telephone Division.

When Plaintiff first began providing services to Defendant, he worked at Defendant's offices on a full-time basis. In the fall of 1998, Plaintiff approached Mr. Woods with a note from one of his physicians and requested that he be permitted to provide services to Defendant from his home. The physician's note stated simply, "[Plaintiff] should be working part-time from home." In the fall or winter of 1998, Mr. Woods and Mr. Robertson jointly decided to allow Plaintiff to work from home, which he continued to do on a part-time basis throughout the remainder of his contracted employment with Defendant.

In November 1999, Defendant decided to consider contractors on Plaintiff's team for employment with the company. Mr. Woods and Mr. Robertson considered hiring Plaintiff as a Software Engineer IV in the ISSD Department. In its announcement for the position opening, Defendant described the Software Engineer IV job as follows: "Defines business problems through interaction with customers. Project planning, estimating[ ] & [sic] management of small-medium size projects." In addition, the following requirement was listed among the knowledge and skills requirements for the position: "Work effectively in a team environ[ment]. Provide assistance to other software engineers in day to day activities." Unlike Plaintiff's duties as a contractor, the Software Engineer IV position called for Lead responsibilities. An employee with Lead responsibilities is expected to mentor other employees, provide direction and assign tasks to team members, provide oversight and advice to team members, and interact with others, including contractors and employees, on a daily basis.

At the time Plaintiff was under consideration for the Software Engineer IV position, the ISSD Department did not permit employees (as opposed to contractors) to telecommute.[2] In addition, Defendant specifically advised Plaintiff that the Software Engineer IV job required him to work from Defendant's offices. Defendant did not hire Plaintiff for the position, claiming that it was the company's understanding that Plaintiff's health prevented him from working from Defendant's offices on a full-time basis.

### III. DISCUSSION

#### A. Disability Discrimination

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... hiring ...." 42 U.S.C. § 12112(a). Where, as here, there is no direct evidence of discrimination, the court applies the three-step, burden-shifting analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (citation omitted) (applying *McDonnell Douglas* analysis to ADA discrimination claim). Under the *McDonnell Douglas* analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff presents a prima facie case, then the burden shifts to the defendant to offer evidence suggesting a legitimate, non-discriminatory reason for the adverse employment action taken against the plaintiff. *Id.* Once the defendant articulates a legitimate, non-discriminatory reason, the ultimate burden reverts to the plaintiff to demonstrate an issue of material fact as to whether the proffered reason is pretextual.

**2.** ISSD Department employees in a designated test group were allowed to telecommute at that time, however, Plaintiff's team was not a part of that test group.

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted). Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To establish a prima facie case of discrimination for failure to hire under the ADA, a plaintiff must show: (1) he has a "disability" within the meaning of the ADA; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of the job he sought; and (3) his employer refused to hire him under circumstances that give rise to an inference that the decision was based on his disability. *See Morgan,* 108 F.3d at 1323 (citation omitted). Defendant contends that Plaintiff has failed to meet any of these three elements.

To satisfy the first element of the prima facie case, Plaintiff must show that he has a "disability" within the meaning of the ADA. *Id.* A person is considered to have a "disability" under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such impairment; or (3) is regarded by the employer as having such an impairment. *Tate v. Farmland Indus., Inc.,* 268 F.3d 989, 992 (10th Cir.2001) (quoting 42 U.S.C. § 12102(2)). Plaintiff claims that he qualifies as "disabled" under each of the three definitions.

### 1. Actual Disability

 The court applies a three-part test to determine whether a plaintiff qualifies as actually "disabled" under the first definition. First, the court must ascertain whether the plaintiff suffers from a physical or mental impairment. *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). Second, the court must identify the life activities affected by the impairment and determine whether those activities qualify as major life activities under the ADA. *Id.* Finally, the court must decide whether the impairment "substantially limits" any of the identified major life activities. *Id.*

In this case, Plaintiff claims to suffer from the following impairments: Morphea, Post–Traumatic Stress Disorder, Vasculitis, Hypertension, Hepatitis C, Heart Disease, and Agent Orange Exposure. He identifies the following major life activities affected by the impairments: walking, sitting, standing, and lifting. Defendant does not challenge the impairments or major life activities identified by Plaintiff, therefore, the court focuses only on the question of whether the impairments "substantially limit" any of the major life activities.

 The existence of a disability is evaluated on a case-by-case basis, such that plaintiffs must offer " 'evidence that the extent of the limitation caused by their impairment *in terms of their own experience* is substantial.' " *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (citations and internal alterations omitted and emphasis added). Any impairments that interfere in only a minor way with a major life activity are clearly precluded from qualifying as disabilities. *Id.* at 197, 122 S.Ct. 681 (citing *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 565, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)). "An impairment 'substantially limits' a major life activity if

the individual is unable to perform the activity or is significantly restricted in the ability to perform the major life activity compared to the general population." *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1240 (10th Cir.2001) (citing 29 C.F.R. § 1630.2(j)(1)). "A court must consider three factors in determining whether an impairment substantially limits a major life activity: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact resulting from the impairment." *Id.* (citing 29 C.F.R. § 1630.2(j)(2)). In essence, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor,* 534 U.S. at 198, 122 S.Ct. 681. Finally, although some impairments may be considered substantially limiting on their face, most require that the plaintiff present comparative evidence that the limitations are significantly below those of the average person. *Lusk,* 238 F.3d at 1240.

■ As previously noted, Plaintiff has failed to controvert any of the facts offered by Defendant in this case. Defendant has offered evidence that Plaintiff is capable of walking up to one-half mile, sitting for up to five hours while driving, and performing "day in, day out" lifting, including lifting up to 100 pounds. Defendant has also presented evidence that Plaintiff is able to work as a computer programmer, care for himself, shower and bathe himself, commute to and from work, drive locally, vacuum, sweep the house, do the laundry, load and unload the dishwasher, mow the lawn, trim and edge the yard, prepare meals, visit with his family, go out to eat, ride an All–Terrain Vehicle, move personal items, help to take care of ten pets, and go fishing. The evidence also indicates that other than advising Plaintiff that he should not engage in "prolonged" walking, sitting,

or standing, Plaintiff's physicians have not placed any specific limitations on his activities.

The court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether he is substantially limited in any major life activities. With the record the court has before it, it cannot conclude that any of Plaintiff's impairments are substantially limiting on their face. Plaintiff has presented no evidence that he is unable to perform or is significantly restricted in the ability to perform the major life activities of walking, sitting, standing, or lifting compared to the general population. He has offered no facts about the nature, severity, or duration of his impairments. And he has failed to present any evidence that his impairments prevent or significantly restrict him from doing activities that are of central importance to most people's daily lives. Given this, the court has no choice but to conclude that Plaintiff does not qualify as actually "disabled" under the ADA.

### 2. *Record of Disability*

Plaintiff also alleges that the first element of the prima facie case is satisfied because he had a record of a disabling impairment. "To have a record of such an impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity." *Sorensen v. Univ. of Utah Hosp.,* 194 F.3d 1084, 1087 (10th Cir.1999) (citations omitted). "The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability." 29 C.F.R. pt. 1630, App. § 1630.2(k).

■■ Plaintiff has also failed to raise a genuine issue of material fact in this case as to whether he had a record of a disabling impairment. He has presented no evidence regarding what "record" he is re-

ferring to, how Defendant relied on that record, whether the record indicated if Plaintiff was disabled and what disability he suffered from, or which major life activity was substantially limited by the recorded impairment. Plaintiff's failure to present this evidence is alone sufficient to conclude that he does not qualify as having a record of a disabling impairment under the ADA. *See Rakity v. Dillon Cos., Inc.,* 302 F.3d 1152, 1160 (10th Cir. 2002) (citation omitted) (stating that the plaintiff must at least *identify* evidence that would raise a genuine issue of material fact). However, even if the court were to assume that the "record" to which Plaintiff refers is the note from his physician stating that "[Plaintiff] should be working part-time from home," this is also insufficient to establish a record of disability. The note, which fails to indicate the nature, duration, or severity of Plaintiff's impairment or impairments, simply fails to demonstrate that Plaintiff suffered from any impairment that substantially limited a major life activity. *Cf. Dotson v. Electro–Wire Prods., Inc.,* 890 F.Supp. 982, 990–91 (D.Kan.1995) (holding that a handwritten medical note stating that the plaintiff should be restricted from "hard physical labor rising her hands" was insufficient to prove a record of a disabling impairment because, among other things, the note did not indicate the duration or severity of her impairment). Therefore, the court concludes that Plaintiff does not qualify as having a record of a disabling impairment under the ADA.

### 3. Regarded as Disabled

 Finally, Plaintiff contends that the first element of the prima facie case is satisfied because Defendant regarded him as having a physical or mental impairment that substantially limited his major life activities. With the "regarded as" provision, Congress sought to protect those discriminated against based on "myths, fears and stereotypes." 29 C.F.R. pt. 1630, App. § 1630.2(*l*); *see also Sch. Bd. of Nassau County v. Arline,* 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). A person is regarded as disabled if either of the following requirements is met:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). An employer is, however, "free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Id.* at 490–91, 119 S.Ct. 2139. Thus, Plaintiff can only survive summary judgment if he presents triable evidence that Defendant regarded him as substantially limited in one or more of his claimed major life activities of walking, sitting, standing, or lifting. *Rakity,* 302 F.3d at 1162.

 Plaintiff has failed to raise a genuine issue of material fact in this case as to whether Defendant regarded him as disabled. Plaintiff has again failed to direct the court to *any* evidence regarding Defendant's beliefs about Plaintiff's impairments affecting his major life activities. Plaintiff's failure to present this evidence is alone sufficient to conclude that Defendant did not regard him as disabled. *Id.* at 1160 (citation omitted) (stating that the plaintiff must at least *identify* evidence

that would raise a genuine issue of material fact). However, even if the court were to assume Plaintiff might rely on (1) the note from his physician stating that "[Plaintiff] should be working part-time from home," and (2) the fact that Defendant's stated reason for not hiring Plaintiff was that it believed Plaintiff's "health" prevented him from working at Defendant's offices on a full-time basis, this evidence is still insufficient to establish that Defendant regarded Plaintiff as disabled. Specifically, an employer's mere knowledge that an employee may have been injured or had limitations on his capabilities does not mean that the employer regarded the employee as disabled. *Lusk*, 238 F.3d at 1241 (citation omitted) ("Defendant's belief that Plaintiff could no longer perform a job that required lifting in excess of Plaintiff's capabilities does not mean that Defendant regarded Plaintiff as disabled."). Again, the standard is that Defendant must have perceived Plaintiff's impairment as substantially limiting a major life activity. *Id.* at 1242 (citation omitted). There is no evidence of such a perception on Defendant's part in this case. Therefore, the court concludes that Plaintiff does not qualify as having been regarded as disabled under the ADA.

In sum, Plaintiff has failed to establish a genuine issue of material fact as to whether he has a "disability" within the meaning of the ADA. Because Plaintiff has not satisfied the first element of his prima facie case, the court grants summary judgment to Defendant. Given this, the court need not consider the remaining arguments advanced by the parties on this claim.

### B. Failure to Accommodate

Plaintiff also appears to claim that Defendant violated the ADA by failing to reasonably accommodate his request to work from home. To establish a prima facie case of failure to accommodate under the ADA, a plaintiff must show that: (1) he has a disability within the meaning of the ADA; (2) the employer had notice of his disability; (3) he could perform the essential function of the job with reasonable accommodation; and (4) the employer refused to provide such accommodation. *Bones v. Honeywell Int'l, Inc.*, 223 F.Supp.2d 1203, 1218 (D.Kan.2002) (citation omitted). The court has already determined that Plaintiff has failed to establish a genuine issue of material fact as to whether he has a "disability" within the meaning of the ADA. Because Plaintiff has not satisfied the first element of his prima facie case, the court grants summary judgment to Defendant. Given this, the court need not consider the remaining arguments advanced by the parties on this claim.

### C. Front Pay

Plaintiff alleges that he is entitled to an unspecified amount of front pay damages in this case. Defendant argues that Plaintiff's claim for front pay is barred by the after-acquired evidence doctrine. Because the court had already granted summary judgment to Defendant on Plaintiff's ADA claims, it need not consider this argument.

### D. Motion to Exclude Expert Testimony

As noted, Defendant also moves to exclude certain expert testimony in this case. Because the court concludes that Defendant is entitled to summary judgment on Plaintiff's claims, it need not address and, therefore, denies as moot Defendant's motion to exclude expert testimony (Doc. 42).

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant's motion for summary judgment (Doc. 40) is granted and its motion to exclude expert testimony (Doc. 42) is denied as moot.

The case is closed.

Copies of this order shall be transmitted to *pro se* Plaintiff and counsel of record for Defendant.

**IT IS SO ORDERED.**