Kathy v. WILLIAMS, Plaintiff,

v.

John E. POTTER, Postmaster General, United States Postal Service, Defendant.

No. CIV.A.02–2568–KHV.

United States District Court, D. Kansas.

May 5, 2004.

Kathy V. Williams, Kansas City, KS, pro se.

David R. Hills, Lenexa, KS, Plaintiff.

David D. Zimmerman, Office of United States Attorney, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Kathy Williams brings suit against defendant John E. Potter, Postmaster General of the United States Postal Service ("USPS"), alleging that the USPS discriminated against her on the bases of race, sex, religion and disability, and retaliated against her for protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* as amended, and the Vocational Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. § 791, 794. This matter comes before the Court on *Defendant's Motion For Summary Judgment* (Doc. # 44) filed January 20, 2004. For reasons stated below, the Court finds that defendant's motion should be sustained in part.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *See Applied Genetics,* 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to re-

quire submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### Facts

The following facts are either uncontroverted or construed in a light most favorable to plaintiff.[1]

The USPS hired plaintiff in 1987, and she continues to work for the USPS. On May 22, 1994, plaintiff filed an Equal Employment Opportunity complaint ("EEO complaint") with the USPS ("Complaint No. 1085–94") alleging discrimination on account of race (black), color (brown), national origin (African–American) and sex (female). Williams Dep. 113–14; Williams Dep. Ex. 4. On March 13, 1996, plaintiff signed an EEO Settlement Agreement which resolved Complaint No. 1085–94 in exchange for a payment of money. The Settlement Agreement stated in part as follows:

> I fully understand that by agreeing to this settlement, I waive my rights to any further appeal of my allegation(s) through the EEO process. I further state that this agreement did not result from harassment, threats, coercion or intimidation.
>
> I am fully aware that any settlement agreement knowingly and voluntarily

agreed to by the parties, reached at any stage of the complaint process is binding on both parties.

> Should I believe the Postal Service has failed to adhere to the stipulations contained in this agreement for any reason not attributable to my acts or conduct, I must notify the EEO Compliance and Appeals Coordinator located in my area, in writing, of the alleged noncompliance within 30 calendar days of the alleged noncompliance . . .
>
> Management agrees to the aforementioned stipulation solely in an effort to resolve the complainant's allegation(s), and this agreement should not be construed as an admission of discrimination or wrongdoing on the part of any official of the U.S. Postal Service.

Whitworth Decl. Attachment 1. After 1994, plaintiff lodged seven additional EEO complaints on four dates: No. 4–I–640–0092–97 on April 16, 1997; Nos. 4–I–640–0014–98, 1–I–641–0059–97, 4–I–640–0013–98 and 4–I–640–0015–98 on November 3, 1997; No. 1–I–643–0016–98 on December 3, 1998; and No. 1–I–643–0006–99 on April 19, 1999. *See Complaint* Ex. A.

### Non–Placement In The ASP Program

In early 1997, the USPS implemented the Associate Supervisor Program ("ASP")

---

1. D. Kan. Rule 56.1 provides as follows:

 (b) Opposing Memorandum.

 (1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.

 (2) If the party opposing summary judgment relies on any facts not in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

 D. Kan. Rule 56.1.

 Plaintiff purports to dispute many of defendant's factual statements, but she does not refer to portions of the record on which she relies. Accordingly, the Court deems such facts admitted.

to identify strong supervisor candidates in the greater Kansas City area and train them to become associate supervisors. In late 1997, the USPS had 26 vacancies for the ASP program. To apply for the ASP, an employee had to submit a Form 991 application, take a written examination, submit a writing sample and interview with the review board. The interview consisted of nine prepared questions designed to solicit information to rate the candidate in seven areas: leadership, decision making, human relations, verbal communications, safety, labor relations and reasoning. In approximately October of 1996, plaintiff applied for the ASP. In early to mid-October, R. Dean Alberti, who was not plaintiff's current immediate supervisor, volunteered to prepare an initial level supervisor evaluation for plaintiff's ASP application. Al Kostus, who had supervised plaintiff, later completed an evaluation for plaintiff. Plaintiff could not use it when she applied for the ASP, however, because Kostus was not a manager at that time.

The ASP review board comprised Bruce Sanders (Manager Distribution Operations, Kansas City, Missouri), Pat Barba (Manager, Customer Service Operations, Kansas City, Missouri), Rosemary Goldblatt (Human Resources Specialist, Kansas City, Missouri) and John Coolidge (Postmaster, Kansas City). On March 13, 1996, Sanders had signed the Settlement Agreement regarding EEO Complaint No. 1–I–641–1085–94. None of the other ASP review board members knew of plaintiff's EEO activity.

The ASP review board initially reviewed the applications and selected 17 candidates, including plaintiff, for interviews. Eligibility for an interview did not mean that the candidate was guaranteed to be selected for the ASP program.[2] After consulting with the ASP Coordinator, the review board reviewed the applications a second time, to expand the applicant pool to a number large enough to fill 26 ASP vacancies. The review board chose ultimately 50 applicants to interview.

Plaintiff performed poorly at her ASP interview.[3] The review board rated her performance as "minimal" in six of the seven interview criteria, and plaintiff had one of the lowest interview scores. Plaintiff testified that her performance during the interview was "passing" and "acceptable." She also stated that "I don't believe my best was required." Plaintiff also admitted, however, that she had no basis on which to compare her interview performance and that of other applicants. Williams Dep. 241–42. Further, on February 17, 1997, plaintiff stated in a letter to USPS Regional Director William Brown that "I had explained to the interviewers at the time of the interview that I was not at my best due to personal reasons without expounding (i.e. a death the day before, two additional burdens and one of the first questions asked during the interview process)." Williams Dep. Ex. 10 at 043. 18.

The review board compiled each candidate's scores from the written examinations, written applications, supervisor evaluations and interviews. The board then

**2.** Plaintiff attempts to controvert defendant's statement of fact on this matter with the statement: "Controverted as evidentiary of Defendant's pretextual reasoning." Plaintiff then alleges that defendant falsified the selection matrix by representing plaintiff as rated below applicants who were not among the initial pool of 17 applicants. Plaintiff does not cite record evidence for these allegations.

**3.** Defendant cites evidence that during her interview plaintiff was emotional to the point of tears. In response, plaintiff notes that some review board members did not remember that she cried during her interview, while others did not recall any crying or personal problems. Whether plaintiff cried during her interview does not appear to be material to the issues before the Court.

selected the 26 candidates with the highest composite scores for the ASP.

*Alleged Disability Claim*

On December 13, 1997, plaintiff injured her left elbow. She sought medical treatment from Dr. Louis Orlando, who referred her to Dr. Alexandra Strong, an orthopedic specialist, on March 19, 1998. Dr. Strong treated plaintiff from March of 1998 through November of 1999. Dr. Strong prescribed work restrictions of a five-pound lifting limit. No later than April 28, 1998, the USPS assigned plaintiff to light duty work. Plaintiff had a light duty designation from April through September of 1998. During that period, she worked her then-current job as Air Records Processor with accommodations that accounted for her work restrictions.

In a letter to Dr. Strong on August 30, 1998, plaintiff stated that "my employer ha[s] not yet assumed responsibility for this on-the-job-injury." In the same letter, plaintiff wrote as follows:

> Additionally, I requested to be relieved of duty. I have utilized minimal sick leave and/or days off/after-work-hours for the treatment of this injury. After complaining of my back hurting again, I did not perform my duty. As was the case during the first week of my vacation, my aches and pains were markedly improved until I returned to duty. Coupling this with the new pain of my left shoulder blade resultant from the MRI, this is overly excessive. I wish to do simple things like clean my house which I can not do anticipating the pain of going to work.

Strong Dep. Ex. 4 at STRONG 0058.

In early September of 1998, Jerome Barnes, Acting Manager of District Operations, asked plaintiff to update her medical documentation because plaintiff's supervisor, Jerome Greene, had told him that plaintiff was taking unscheduled breaks. On September 4, 1998, Dr. Strong increased plaintiff's work restrictions to include (1) no lifting over five pounds, (2) no climbing more than (blank) times per hour, (3) no pushing or pulling more than zero pounds per day, (4) eight maximum hours of work per day and (5) no repetitive activity, pushing, pulling, lifting or reaching away from body. Dr. Strong testified that she intended these restrictions for only the left side of plaintiff's body, but her light duty form did not specify left side only. On September 4, 1998, plaintiff gave the light duty form to Barnes, who asked plaintiff for medical clarification of her work restrictions. Barnes Dep. at 48–49; 61–62.

On September 8, 1998, Dr. Strong examined plaintiff's arm and shoulder. Dr. Strong observed that plaintiff was "very tender" in her parascapular muscles,[4] and stated that "I think she has some spasm and soreness." Dr. Strong concluded that plaintiff would benefit from physical therapy, and placed her on more work restrictions. Strong Dep. Ex. 4 at STRONG 0073.

On September 11, 1998, Dr. Strong wrote Barnes a letter which stated as follows:

> RE: Kathy Williams. The above named patient is restricted from reaching away from her body repetitively. This means that she cannot pick up or draw toward or push items away from her body. "Reaching is called abduction or moving away from the body."

Strong Ex. 4 at STRONG 0014. After he read this letter, Barnes concluded that plaintiff could not continue to perform the

---

**4.** The parascapular muscles are the upper back muscles between the shoulder blade and spine.

job functions of an Air Records Processor, which required repetitive reaching away from her body. Barnes attempted to locate available work in the Air Mail Center, where plaintiff was working, and contacted the local office to see if it had work available within plaintiff's new work restrictions. No work was available, so Barnes sent Williams home and told her not to report for work until her restrictions changed. On September 22, 1998, plaintiff sent a letter to Robert W. Barnes, Office of Worker's Compensation of the United States Department of Labor, stating that "[m]y employer repeatedly asks whether my restrictions have changed when I call to inquire if I may report." Strong Ex. 3 at STRONG 0010. On November 24, 1998, Dr. Strong examined plaintiff and concluded that although plaintiff was feeling better, she should continue with the same work restrictions.

The USPS considered plaintiff's work restrictions temporary and the records indicate that her impairment was in fact temporary. Between September of 1998 and January of 1999 the USPS was not aware that plaintiff's prescribed work restrictions were limited to one arm. Between September 11 and December 28, 1998, Dr. Strong wrote letters specifying the same work restrictions for plaintiff as in the letter of September, 1998. None of the letters specified that the work restrictions were limited to plaintiff's left arm. On January 20, 1999, Dr. Strong examined plaintiff, concluded that her condition had improved, and issued new work restrictions as follows:

RE: Kathy Williams. The above named patient is on restricted duty with a lifting restriction of 17 pounds. She is to work only 40 hours a week. The patient

has advised that the post office has refused to return her to restricted duty over the past several months.

Strong Dep. Ex. at STRONG 0044. Plaintiff returned to work shortly after Dr. Strong modified her work restrictions.

*Supervisor, Customer Services, Olathe, Kansas*

On April 8, 1997, the USPS issued a vacancy announcement for the position of Supervisor, Customer Services, at the Olathe Post Office in Olathe, Kansas. The announcement stated: "HOW TO APPLY (Individual Announcement Procedures): Complete Form 991 and return DIRECTLY to your immediate supervisor before the closing date shown above."[5] Williams Dep. Ex. 21; Williams Dep. 336–37. The Form 991 stated: "If you are applying for a specific position, complete pages 1–4 of this form and submit the completed form to your supervisor, who will complete the evaluation for each requirement. If you want a copy of the evaluation, check the box at left." Plaintiff checked the box with a handwritten "x." Williams Dep. Ex. 22 at 066.

Plaintiff did not submit the completed Form 991 to her immediate supervisor, and she did not ask her then-current immediate supervisor to prepare a supervisor's evaluation for her application for the Olathe position. Instead, she attached to her application materials an evaluation which her former supervisor, Bruce Sanders, had written for a prior job application (no. 96–55). Sanders had completed that evaluation on August 20, 1996—about eight months before plaintiff submitted her application on April 22, 1997.

---

5. The USPS Handbook section which governs individual announcement application procedures requires employees applying for an initial level supervisor position to submit Form 991 (job application) "to their immediate supervisor for evaluation." EEO Case No. 4–I–640–0013–98 Ex. 34; EEO Tr. 154–55 (Wilson).

The review board for the Olathe position comprised chairperson Sara Wilson (Postmaster, Baldwin City, Kansas), Edward Keith Coleman (Operations Support Specialist) and Jean Moore (Supervisor, Customer Service Operations, Shawnee Mission, Kansas). The review board members did not recommend plaintiff for the Olathe position because her supervisor evaluation was not current and plaintiff had not received a consolidated rating as one of the most qualified candidates.[6] Moore had investigated plaintiff's EEO complaint in 1994, but when she participated on the review board for the Olathe position, she did not recall plaintiff's EEO activity. Moore had counseled hundreds of individuals on EEO complaints and formally processed even more cases than she had counseled.[7] Moore Olathe Aff.; Williams Dep. Ex. 4. Wilson and Coleman did not know of plaintiff's prior EEO activity.

*Customer Services Supervisor, Shawnee Mission, Kansas*

On April 8, 1997, the USPS issued a vacancy announcement for the position of Customer Services Supervisor, at the Shawnee Mission Post Office in Shawnee Mission, Kansas. As with the Olathe position, the announcement stated: "HOW TO APPLY (Individual Announcement Procedures): Complete Form 991 and return DIRECTLY to your immediate supervisor before the closing date shown above."[8] Williams Dep. Ex. 26; Williams Dep. 352–53; Moore Dep. Ex. 4. Plaintiff submitted the Form 991 for the Shawnee Mission position, which stated: "If you are applying for a specific position, complete pages 1–4 of this form and submit the completed

form to your supervisor, who will complete the evaluation for each requirement. If you want a copy of the evaluation, check the box at left." Plaintiff checked the box with a handwritten "x." Williams Dep. Ex. 27 at 100. Plaintiff did not submit the completed Form 991 to her immediate supervisor. Further, instead of asking her then-current immediate supervisor to prepare an evaluation, she copied the Bruce Sanders' evaluation for the prior job application (no. 96–55) and attached that evaluation to her application materials for the Shawnee Mission position. Sanders had prepared plaintiff's evaluation on August 20, 1996, and plaintiff submitted her application for the Shawnee Mission position on April 22, 1997.

The review board for the Shawnee Mission position comprised chairperson Charles Pennewell (Manager, Customer Service Operations, Prairie Village branch in Shawnee Mission, Kansas), Jeffrey Omang (Manager, Customer Service, Leawood Branch in Shawnee Mission, Kansas) and Jean Moore (Supervisor, Customer Service Operations, Shawnee Mission, Kansas). The review board members did not recommend plaintiff for the position because her supervisor evaluation was not current. As noted earlier, Moore had been the investigator for plaintiff's EEO complaint in 1994. When she participated as a member of the review board for the Shawnee Mission position, however, Moore did not recall plaintiff's prior EEO activity. Pennewell and Omang did not know of plaintiff's EEO activity during the review process.

---

6. Wilson had been trained that an important part of the application was a timely supervisor's evaluation. EEO Tr. 152 (Wilson); *see also* EEO Tr. 149.

7. Plaintiff asserts that Moore's testimony was inconsistent, but the Court does not perceive any material inconsistency.

8. Again, the USPS Handbook provides that employees applying for an initial level supervisor position must submit the Form 991 "to their immediate supervisor for evaluation." EEO Case No. 4–I–640–0013–98 Ex. 34; EEO Tr. 154–55 (Wilson).

*Air Records Processor Position*

In 1997, plaintiff applied for and qualified for the position of Air Records Processor. Barbara McCrary, a USPS human resources specialist who was responsible for internal bidding for positions, was mistakenly informed that plaintiff did not qualify for the position. In August of 1997, the USPS awarded the position to another employee. The following month, the USPS discovered its error and immediately placed plaintiff in an Air Records Processor position.[9] McCrary knew nothing about plaintiff's prior EEO activity.

*Plaintiff's Use Of Leave*

On August 9, 1998, plaintiff submitted a Form 3971 (a request for or notification of absence) on which she requested three different types of leave: "COP" (continuation of pay), sick and other. Because the form requested three different types of leave, Jerome Greene, plaintiff' supervisor, denied the request and told plaintiff to resubmit the form with only one block checked to indicate the type of leave that she was requesting.[10]

On August 11, 1998, two days after she applied for leave, plaintiff was absent. When she returned to work, Greene specifically instructed her to submit a Form 3971 requesting leave for August 11. Plaintiff refused. Barnes, acting manager of operations, then asked her to change the Form 3971, and plaintiff replied that she had "sworn to God" that she would not sign another Form 3971. On approximately August 26, 1998, Greene issued plaintiff a Letter of Warning for being absent with-

out leave ("AWOL") on August 11, 1998. Barnes Dep. 132–33; Barnes Dep. Ex. 8 at 25–26 (unsigned copy). Pursuant to a grievance process, on September 10, 1998, Barnes directed that the warning letter be expunged from plaintiff's record effective January 1, 1999, if she had no further AWOL-related discipline by that date. Plaintiff fulfilled that condition and the USPS expunged her warning letter.

*Clerk Stenographer Position*

In June of 1997, plaintiff applied for the position of Clerk Stenographer. She took the required examination on June 19, 1997. Barbara McCrary, who was responsible for posting, bidding, and awarding jobs, administered the exam. On June 29, 1997, plaintiff received a rating of "ineligible" for the Clerk Stenographer position.

*Stamp Distribution Clerk Position*

In January of 1999, the USPS solicited applications for the position of Stamp Distribution Clerk (Notice 99BQ01). The vacancy notice stated that each applicant was responsible for ensuring that the application reached the Assignment Desk, Room 567, General Post Office not later than 4:00 p.m. on January 28, 1999. The USPS did not consider untimely applications. Plaintiff applied for the Stamp Distribution Clerk position but her application was received on February 3, 1999—after the deadline. On February 3, 1999, Human Resources Specialist Ofenie Roper sent plaintiff a letter which stated that her application was late and that she was therefore ineligible for the position. EEO

---

9. In November of 1999, during pay period 24, the USPS paid plaintiff $3,576.77 as out-of-schedule-pay for pay periods 16 through 21 of 1997 in connection with an EEO complaint. Decl. of Lonnie Beattle at 3–4. Pay periods 16 through 21 of 1997 correspond to July through October of 1997, the time for which plaintiff had qualified for the position of Air Records Processor, but had not yet been placed in the position.

10. On numerous occasions, plaintiff had submitted defective Forms 3971 in which she had requested multiple types of leave in the same request, or had requested Continuation of Pay ("COP"), a category of leave for which she did not qualify because she did not at the time have a recognized on-the-job injury. Greene had previously required plaintiff to resubmit a Form 3971 because she had requested COP leave for which she did not qualify.

Tr. 732–33; Investigative File for EEO Case No. 1–I–643–006–99 at 088. As of August of 1999, Ms. Davila–Brownlee (fnu), who was the Human Resources Specialist responsible for filling the position, was not aware of plaintiff's prior EEO activity.

*Reduction Of Plaintiff's Base Pay Due To Failure To Apply For Available Positions*

Plaintiff worked as a Mail Processing Letter Sorting Machine Distribution Clerk ("letter sorting machine clerk") from September 1987 until July 18, 1997, when the USPS abolished her position because it was eliminating letter sorting machines. Plaintiff was at pay Level 6 when the USPS eliminated her position. The USPS provided letter sorting machine clerks protection against a decrease in pay level if they met certain conditions and gave them the right to retreat to the first available Level 6 position. Beginning July 19, 1997, plaintiff received saved grade protection. She was entitled to pay protection until she failed to bid or apply for any posted Level 6 (or higher) full time assignment or until she asked to change to a lower level position. In October 1997, the USPS posted a Level 6 PSDS Technician position for which plaintiff did not apply. In February of 1999, the USPS realized that plaintiff was not entitled to continue saved grade status because she had not applied for the PSDS Technician position. It therefore terminated plaintiff's saved grade status and reduced plaintiff's pay to Level 5.

### Analysis

Plaintiff claims that defendant discriminated against her on the bases of sex, race, religion and disability, and that defendant retaliated against her for filing EEO complaints.[11] Specifically, plaintiff alleges that because of her sex, race, religion, disability

11. It is difficult at first blush to discern the exact nature of plaintiff's sex and race discrimination claims. The pretrial order factual contention section recites the allegations in plaintiff's seven EEO complaints beginning in 1997, and states that each adverse employment action or failure to promote was "based upon plaintiff's black African–American race, female sex and retaliation for prior EEO activity." *Pretrial Order* (Doc. # 39) filed December 16, 2003 at 10–13. By contrast, in plaintiff's theories of recovery, the pretrial order includes for each EEO complaint the statement that "[p]laintiff's legal theory for her claims for sex and race discrimination is that her prior protected activity for which she made a recovery was based on race and sex discrimination and therefore her present claim for retaliation for prior protected activity would again include a renewed claim for that same sex and race discrimination." *Pretrial Order* (Doc. # 39) at 23–26.

In its summary judgment motion defendant asserts that plaintiff's sex and race discrimination claims seem to revive a claim based upon the conduct set out in plaintiff's 1994 EEO complaint. A review of the entire pretrial order, however, reveals that plaintiff makes no claims of race or sex discrimination based upon the facts underlying her EEO complaint of 1994. In the "ISSUES" section of the pretrial order under "Plaintiff's Second Theory of Recovery i.e., Disparate Treatment and Discrimination based upon race," plaintiff sets out the elements of a race discrimination claim. In that same section, plaintiff lists as an issue of fact the following question: "[w]as race a motivating factor in defendant's decision to deny plaintiff's applications to the Associate Supervisors Program; Supervisor, Customer Service at the Post Office of Shawnee Mission and Olathe, Kansas; the Clerk Stenographer position; and Stamp Distribution Clerk?" Doc. # 39 at 33. Similarly, under "Plaintiffs Fourth Theory of Recovery i.e., Disparate Treatment and Discrimination based upon sex," plaintiff sets out the elements of a sex discrimination claim and lists as an issue of fact the question "[w]as plaintiff's gender a motivating factor in defendant's decision to [reject her application for certain positions and to take adverse action against her]?" *Id.* at 38. Liberally construing the pretrial order, the Court finds that plaintiff has set forth claims of disparate treatment based on race and sex as to the conduct set out in her seven EEO complaints.

and EEO complaints, defendant (a) failed to promote her to positions for which she applied or attempted to apply;[12] (b) refused in August of 1998 to accept a leave slip; (c) placed a warning letter in her record on August 26, 1998; and (d) terminated her saved grade pay status in February of 2002. Defendant asserts that it is entitled to summary judgment because plaintiff has waived her right to file a race or sex discrimination claim based on EEO Complaint Number 1085–94 and because plaintiff has not set forth the prima facie elements of any claims of disparate treatment or retaliation. In response, plaintiff states as follows:

Plaintiff contends that controversy of the content of Defendants' Motion for Summary Judgment are in conflict with the evidence. Thereby, Defendants' Arguments and Authorities are without bases and irrelevant.

Plaintiff attests to the undue hardship of responding to Defendants' Motion by extension and asks the mercy of the court of such argument is required in spite of the evidence presented.

Plaintiff asks the Court to consider "Uncontroverted" with stipulations, if grammatically incorrect to signify Points or sub-parts of Points to be without controversy.

Plaintiff moves the Court to deny Defendant's Motion For Summary Judgment and remand the case for trial as scheduled.

*Plaintiff's Response To Defendant's Motion For Summary Judgment* (Doc. # 52) filed February 8, 2004.

 To prevail on her claims of discrimination, plaintiff must establish that her race, religion, sex or prior EEO activity was a determining factor in the challenged decision. *See Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 557 (10th Cir. 1996) (citing *Lucas v. Dover Corp.,* 857 F.2d 1397, 1400 (10th Cir.1988)). She may meet this burden by direct or circumstantial evidence. Because plaintiff has offered no direct evidence of discrimination, she must rely upon circumstantial evidence, and the Court therefore applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1225 (10th Cir.2000). Under this approach, plaintiff initially bears the burden of production to establish a prima facie case of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (racial discrimination); *Burdine,* 450 U.S. at 252–56, 101 S.Ct. 1089 (sex discrimination); *Thomas v. Nat'l Ass'n of Letter Carriers,* 225 F.3d 1149, 1155 (10th Cir.2000) (religious discrimination); *Wells v. Colo. Dep't of Transp.,* 325 F.3d 1205, 1212 (10th Cir.2003) (retaliation). If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions. *See Reynolds v. Sch. Dist. No. 1,* 69 F.3d 1523, 1533 (10th Cir. 1995). If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence that defendant's proffered reason is pretextual, that is, "unworthy of belief." *Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1165 (10th Cir.1998) (quoting *Randle*

---

12. With regard to several positions for which plaintiff attempted to apply but her application was late, plaintiff attempts to characterize defendant's actions as adverse employment actions. Defendant asserts that those are properly deemed failure to promote claim. The Court finds that the claims are failure to promote claims because the refusal to accept the applications did not impact her then current conditions of employment.

*v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)).

■ A plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997). The *McDonnell Douglas* burden shifting analysis generally applies to claims of disability discrimination also, but the inquiry is more complicated and the Court addresses it separately below. *See Woodman v. Runyon,* 132 F.3d 1330, 1344 (plaintiff who asserts plausible accommodation bears burden of production which, if made, shifts burden of production to defendant to prove that accommodation would pose undue hardship).

## I. *Sex And Race Discrimination Claims*

■ Defendant first asserts that it is entitled to summary judgment on all of plaintiff's claims of sex and race discrimination. Defendant contends that the only basis for those claims is that plaintiff's claims of retaliation for prior EEO activity allow her to renew the claims of sex and race discrimination that she raised in EEO Complaint 1085–94. Defendant points out that plaintiff settled the claim in Complaint 1085–94 and expressly waived her right to pursue further action on that claim. Plaintiff's settlement of EEO Complaint Number 1085–94 is binding. *See* 29 C.F.R. § 1614.504(a) (1996) ("Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties."). The Court agrees that even if the USPS retaliated against plaintiff for prior EEO activity, her prior allegations would not be revived.

*See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The Court does not agree that in this case, plaintiff's only claims of sex and race discrimination are claims that she expressly waived and would have to be revived to be pursued. Reading the pretrial order as a whole, it is clear that plaintiff alleges discrete, independent acts of race and sex discrimination in EEOC complaints which she filed *after* she settled EEO Complaint Number 1085–94. *See infra,* footnote 11. Defendant has not addressed the merits of these claims. The Court therefore finds that defendant is not entitled to summary judgment on plaintiff's claims of discrimination on the bases of race and sex.

## II. *Disability Discrimination Claims*

■ Defendant next asserts that it is entitled to summary judgment on plaintiff's claim of disability discrimination under the Rehabilitation Act, 29 U.S.C. § 791, 794, because plaintiff cannot show that she was disabled within the statute. Defendant specifically argues that plaintiff's physical restrictions were both temporary and regarded as temporary by the USPS.

■ The Rehabilitation Act incorporates the standards of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* including the definition of disability. Under the ADA, a "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Rakity v. Dillon Co.,* 302 F.3d 1152, 1158 (10th Cir. 2002). A major life activity is a "basic activity that the average person in the general population can perform with little or no difficulty." *Rakity,* 302 F.3d at 1158

(quoting *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999)). Major life activities include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working." *Rakity*, 302 F.3d at 1158 (quoting *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495–96 (10th Cir.2000)). Plaintiff bears the burden of demonstrating that she has an impairment that substantially limits a major life activity. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). In determining whether an individual is substantially limited in a major life activity, the Court considers three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or expected permanent or long term impact of or resulting from the impairment. *Id.* at 196, 122 S.Ct. 681 (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)). To be substantially limited in performing manual tasks the impairment's impact must be permanent or long term. *Id.* at 198, 122 S.Ct. 681.

In this case, plaintiff's impairment allowed her to return to light duty work in January of 1999, about four months after she stopped work on September 10, 1998. Such a period of time is not considered long term. *See Baffoe v. W.H. Stewart, Co.*, 211 F.3d 1277, 2000 WL 484878, at *5 (10th Cir.2000) (plaintiff unable to work while recovering from surgery released to return to work less than three months after he completed his physical therapy; impairment "of short duration, with little or no long-term or permanent impact") (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)) (citing *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 646 (2d Cir.1998) (impairment not substantially limiting where employee hospitalized for 30 days, then remained at home for six months and placed on light duty for seven years following return to work)); *see also Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir.1996) (three and one-half month impairment with minimal residual effects not substantially limiting). Furthermore, the record contains no evidence that the USPS perceived plaintiff's work restrictions to be permanent or long term, and the record contains no evidence of any USPS record that plaintiff was subject to permanent or long-term impairment. Barnes, the operations manager, believed that plaintiff's work restrictions were temporary and to his knowledge her work restrictions and impairments were temporary. Because plaintiff has not demonstrated that she suffered from a disability, defendant is entitled to summary judgment on her claim of disability discrimination. *See Woodman*, 132 F.3d at 1338; *Pack*, 166 F.3d at 1304 n. 4 (court need not consider whether employer discriminated because plaintiff could not demonstrate disability under ADA).

### III. *Discrimination On The Basis Of Religion*

■ Plaintiff alleges that because she had sworn to God that she would not complete another Form 3971, defendant subjected her to religious discrimination when it required her to submit a properly completed Form 3971 after her absence on August 11, 1998. Defendant asserts that it is entitled to summary judgment on this claim because plaintiff cannot demonstrate a prima facie case of religious discrimination.

■ To establish a prima facie case of religious discrimination, plaintiff must show that (1) she had a bona fide religious belief that conflicted with an employment requirement; (2) she informed the employer of this belief; and (3) her employer disciplined her because she did not comply

with the conflicting employment require-ment. *See Thomas,* 225 F.3d at 1155. Defendant asserts that plaintiff cannot establish that she had a bona fide religious belief that conflicted with the requirement to submit or re-submit a Form 3971. As defendant points out, plaintiff had previously submitted and resubmitted a corrected leave slip. Further, plaintiff has not pointed to any evidence of a bona fide religious belief, observance or practice that required her to refrain from submitting leave slips. Defendant is therefore entitled to summary judgment on plaintiff's claim of religious discrimination.

## IV. *Retaliation Claims*

Plaintiff asserts that defendant retaliated against her for filing EEO complaints. Specifically, plaintiff alleges that in retaliation for filing complaints of discrimination, defendant (1) failed to promote her to several positions for which she applied or attempted to apply; (2) refused to accept a leave slip for August 11, 1998; (3) placed a letter of warning in her record on August 26, 1998; and (4) terminated her saved grade pay status in February of 1999.

 To set forth a prima facie case of retaliation, plaintiff must produce evidence that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action *See Wells,* 325 F.3d at 1212. If she does so, the burden shifts to defendant to show a legitimate reason for the adverse action. A plaintiff can establish the causal connection by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. *Burrus,* 683 F.2d at 343. A retaliation claim does not require that plaintiff prevail on the underlying discrimination claim. *See Robbins v. Jefferson*

*County School Dist.,* 186 F.3d 1253, 1258 (10th Cir.1999).

Plaintiff alleges numerous actions by the USPS that she asserts were in retaliation for filing complaints of discrimination. The Court addresses each in turn.

### A. *Failure To Promote Plaintiff To ASP Program*

Plaintiff alleges that the USPS retaliated against her by not selecting her for the ASP program because of prior EEO activity. Defendant asserts that it is entitled to summary judgment on this claim because plaintiff cannot demonstrate a causal nexus between prior protected activity (her EEO complaint of 1994) and the decision not to select her for the ASP program in February of 1997. Defendant further contends that even if plaintiff presented a prima facie claim, the USPS had a legitimate, nondiscriminatory reason for its decision not to promote plaintiff to ASP.

 Defendant asserts that plaintiff cannot show a causal nexus because too much time passed between her prior EEO activity in May of 1994, and its decision on February 13, 1997 not to select her for the ASP program. The Court agrees that absent other evidence of retaliation, two years and 10 months between the prior protected activity and the alleged discrimination is generally too long a time to infer retaliation from temporal proximity. *See Wells,* 325 F.3d at 1217 (five-month gap, without more, ordinarily too great to infer causation on timing alone); *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (three month period, standing alone, insufficient to establish causation). If the Court calculates the pertinent period from the date when plaintiff signed the settlement agreement on March 13, 1996, eleven months passed between that date and the decision not to place plaintiff in the ASP program. Absent other evi-

dence, however, eleven months is still too long to infer retaliation.

Plaintiff has shown no temporal nexus between her prior EEO activity and her non-placement in ASP. She has not alleged circumstances which overcome the presumption against a nexus due to the absence of close temporal proximity. *See Coors*, 181 F.3d at 1179 (absent very close temporal connection, additional evidence required to prove nexus). Further, as defendant points out, only one member of the review board—Bruce Sanders—knew of plaintiff's prior EEO activity. He recalled that activity only vaguely. Sanders signed the settlement agreement that resolved the complaint but he was not named in the prior EEO complaint. *Cf. Wells*, 325 F.3d at 1217 (special circumstance included fact that person who fired plaintiff was specifically accused of discrimination in prior EEO complaint and was aware of its filing). Plaintiff has not produced evidence of the required nexus between the prior EEO activity and the alleged discriminatory action. Defendant is therefore entitled to summary judgment on plaintiff's claim that the USPS retaliated for her EEO complaint in 1994 when it decided not to place her in the ASP program.

■ Defendant alternatively asserts that even if plaintiff established a prima facie case of retaliation, the USPS had a legitimate, non-discriminatory reason for declining to accept plaintiff into the ASP program—she did not earn a composite score high enough to qualify for one of the 26 positions in the program. Plaintiff's performance in the interview, which the review board rated as among the worst of all interviewees, resulted in a low overall rating. Although plaintiff testified that her interview was "acceptable" or "passing," her personal opinions about her qualifications do not give rise to a material factual dispute. *See Amro v. Boeing Co.*, 232 F.3d 790, 798 (10th Cir.2000) (evalua-

tion of own job performance insufficient to create material issue). Defendant has produced evidence of a legitimate, non-discriminatory reason for deciding that plaintiff was not one of the best qualified candidates for ASP. Plaintiff has not pointed to evidence to rebut this legitimate reason. Defendant is entitled to summary judgment on plaintiff's claim that in failing to select plaintiff for the ASP program, it was retaliating for her prior EEO complaint.

**B.** *Failure To Promote To Customer Services Supervisor In Olathe*

■ Plaintiff claims that in retaliation for her EEO complaint in 1994, the USPS did not select her for the Olathe Customer Services Supervisor position. Defendant asserts that it is entitled to summary judgment on this claim because plaintiff has not set forth a prima facie case of retaliation. Specifically, defendant contends that plaintiff has not shown a causal nexus between prior EEO activity and the review board's decision not to select her for the Olathe position. *See Wells*, 325 F.3d at 1212. Plaintiff does not point to any evidence of a causal nexus. The only possible nexus is that Jean Moore, who had been plaintiff's EEO counselor in July 1994, was a member of the Olathe position review board in 1997. This alone is insufficient to establish a nexus because three years passed between the time Moore acted as plaintiff's EEO counselor and the time she participated in the selection process for the Olathe position. *See Wells*, 325 F.3d at 1217; *Coors*, 181 F.3d at 1179. Moore did not even recall whether plaintiff was one of the hundreds of people in whose EEO proceedings she was involved. None of the other review board members knew of plaintiff's prior EEO activity. The Court concludes that plaintiff has not set forth a prima facie case of retaliation on her non-selection for the Olathe position.

■ Even if plaintiff set forth a prima facie claim, the USPS has articulated a legitimate, non-discriminatory reason for not promoting plaintiff. Plaintiff did not follow the procedure for submitting the Form 991 because she submitted an outdated supervisor's evaluation. After reviewing plaintiff's application and discovering that she had not submitted a current evaluation, the review board decided not to recommend plaintiff for the Olathe position. The Court finds that defendant is entitled to summary judgment on her retaliation claim concerning the Olathe position.

C. *Failure To Promote To Customer Services Supervisor In Shawnee Mission*

■ Plaintiff claims that the USPS retaliated against her for prior EEO complaints when it did not select her for the Supervisor of Customer Services in Shawnee Mission. Defendant asserts that it is entitled to summary judgment because plaintiff has not set forth evidence of a prima facie case of retaliation. Specifically, defendant contends that plaintiff has not shown a causal nexus between prior EEO activity and the review board's decision not to select her for the position. *See Wells*, 325 F.3d at 1212. Again, plaintiff does not point to evidence of a causal nexus. As with the other position, the only possible nexus is that Jean Moore, who had been plaintiff's EEO counselor in July 1994, served on the Shawnee Mission Olathe position review board in 1997. Three years passed between the time Moore acted as plaintiff's EEO counselor and the selection process for the Shawnee Mission position. *See Wells*, 325 F.3d at 1217; *Coors*, 181 F.3d at 1179. None of the other review board members knew of plaintiff's prior EEO activity, and plaintiff has not set forth any other evidence of a nexus. The Court concludes that plaintiff has not set forth a prima facie case of retaliation based on non-selection for the Shawnee Mission position.

Even if plaintiff had set forth a prima facie case of retaliation, the USPS has articulated a legitimate, non-discriminatory reason for its decision not to promote plaintiff to the Shawnee Mission position. As with the Olathe position, the Shawnee Mission vacancy announcement and the Form 991 instructed plaintiff to submit a current supervisor's evaluation for the position. The review board decided not to recommend plaintiff for the position because she did not do so. Plaintiff points to no evidence to rebut defendant's legitimate, nondiscriminatory reason for not promoting her. The Court concludes that defendant is entitled to summary judgment on plaintiff's retaliation claim regarding the Shawnee Mission position.

D. *Failure To Promote To Air Records Processor Position*

■ Plaintiff next alleges that the USPS retaliated against her for previous EEO activity when it mistakenly concluded that she did not qualify for an Air Records Processor position in 1997. Defendant asserts that it is entitled to summary judgment because plaintiff has not set forth a prima facie case of retaliation. Defendant specifically asserts that plaintiff has not set forth evidence of a causal nexus between her prior EEO activity and the delay in placing her in an Air Records Processor position.

Barbara McCrary, who was responsible for job bids (internal hiring), testified that she had no knowledge of plaintiff's prior EEO activity, and plaintiff has not demonstrated any other reasonable nexus. Therefore, she has not set forth a prima facie case of retaliation.

Even if plaintiff had set forth a prima facie case of retaliation, she cannot demonstrate that she ultimately suffered any damages. The USPS placed plaintiff in an

Air Records Processor position during the pay period after it discovered that she qualified for the position, and later paid her $3,576.77 for the lost pay period when she should have been placed in the position. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998) (had plaintiff received full pay retroactively, claim would fail). *Cf. Toney v. Cuomo*, 92 F.Supp.2d 1186, 1193 (D.Kan.2000) (Title VII does not guarantee against any deviations from procedures; deviation alone insufficient to establish pretext).

### E. *Plaintiff's Use Of Leave And Letter Of Warning*

Plaintiff alleges that defendant retaliated against her by harassing her about use of leave, breaks and work and placing a letter of warning in her file on August 26, 1998. Defendant asserts that it is entitled to summary judgment because none of these actions constituted adverse employment actions. Alternatively, defendant asserts that it had legitimate, non-discriminatory reasons for the actions.

 Plaintiff alleges that her supervisor and manager took adverse employment action by repeatedly requiring her to resubmit leave forms and asking her whereabouts during breaks. Defendant points out that although the Tenth Circuit liberally defines adverse employment actions, actions that are merely inconvenient do not constitute adverse actions. *Wells*, 325 F.3d at 1212–13; *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000). Indeed, plaintiff's allegations do not demonstrate that defendant's conduct was materially adverse to her job status.[13] *Wells*, 325 F.3d at 1213. Therefore she has not demonstrated that she was subjected to adverse action. Further, plaintiff

has produced no evidence of disparate treatment, *i.e.* that other employees did not have to resubmit claim forms or answer questions about their breaks.

 Plaintiff also alleges that the USPS retaliated against her when it issued a letter of warning on August 26, 1998. Defendant asserts that plaintiff has not set forth a prima facie case of retaliation because the letter of warning, which was expunged, did not constitute adverse employment action. *See Cuenca v. Univ. of Kan.*, 265 F.Supp.2d 1191, 1209 (D.Kan. 2003) (letter of reprimand not adverse action where it did not have negative effect on employment); *see also Benningfield*, 157 F.3d at 377 (formal AWOL reprimand that was rescinded by internal procedures not adverse employment action); *cf. Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir.1998) (20 written warnings were adverse actions because the more warnings an employee received, the more likely termination for further infraction would be). In this case, defendant expunged the warning letter through a grievance settlement dated September 22, 1998, and the record contains no evidence that the letter has impacted the terms and conditions of plaintiff's employment.

Plaintiff has not shown that the requests for re-submission of leave forms, inquiries about breaks, or the expunged warning letter constitute adverse employment actions. Defendant is entitled to summary judgment because plaintiff has not set out evidence of a prima facie case of retaliation based on these actions.

### F. *Failure To Promote To Clerk Stenographer Position*

Plaintiff alleges that defendant retaliated against her for prior EEO activity when

---

**13.** On numerous occasions, plaintiff had submitted defective Forms 3971 in which she had requested multiple types of leave in the same request, or had requested COP, a category of leave for which she did not qualify because she did not at the time have a recognized on-the-job injury.

it did not place her in the position of Clerk Stenographer. Defendant asserts that it is entitled to summary judgment because plaintiff has not presented evidence of a prima facie case and even if she did, it had a legitimate, non-discriminatory reason for not promoting her to the position.

To present a prima facie case of failure to promote, plaintiff must show that she was qualified for the position. *See Amro,* 232 F.3d at 796. Plaintiff's performance on the Clerk Stenographer examination rated a score of ineligible, which disqualified her from the position. Further, plaintiff must demonstrate a causal nexus between her prior EEO activity and the decision not to place her in the stenographer position. Barbara McCrary was the person responsible for filling the position, and she knew nothing about plaintiff's prior EEO activity. Plaintiff has not set forth a prima facie case of retaliation as to the Clerk Stenographer position. Furthermore, even assuming that plaintiff established a prima facie claim, defendant has articulated a legitimate, non-discriminatory reason for the decision not to place her as a Clerk Stenographer—her test rating of ineligible. Plaintiff has not attempted to rebut the proffered legitimate reason. Defendant is entitled to summary judgment as to plaintiff's claim of retaliation based on the Clerk Stenographer position.

G. *Ineligibility To Apply For Positions Requiring Completion Of The ASP*

Plaintiff complains that the USPS made non-supervisory personnel ineligible for certain positions of Customer Services Supervisor in the Kansas City metropolitan area if they had not completed the ASP program and then retaliated against her by not selecting her for the ASP. Plaintiff concedes that she never completed the ASP program and therefore she is not qualified for positions that required completion of the ASP. Therefore she cannot establish the second prima facie element of this failure to promote claim. *See Amro,* 232 F.3d at 796. Further, she has not demonstrated a causal nexus between her prior EEO activity and the allegedly adverse decision. *See Wells,* 325 F.3d at 1212. Defendant is entitled to summary judgment on this claim.

H. *Rejection Of Plaintiff's Application For Stamp Distribution Clerk*

Plaintiff alleges that in retaliation for prior EEO activity, the USPS improperly rejected her application for the position of Stamp Distribution Clerk. Defendant asserts that plaintiff has not set forth a prima facie claim of retaliation because she has not set forth a causal nexus between prior EEO activity and the allegedly discriminatory act. Plaintiff has not shown any reasonable nexus, and defendant is entitled to summary judgment on the retaliation claim.

I. *Reduction In Plaintiff's Base Pay From Level 6 To Level 5*

Finally, plaintiff alleges that in 1997 when the USPS reduced her base pay from Level 6 to Level 5, it was retaliating for prior EEO activity. Defendant asserts that it is entitled to summary judgment because plaintiff does not demonstrate a prima facie case of retaliation. Specifically, defendant asserts that plaintiff has not shown a reasonable nexus between prior EEO activity and allegedly discriminatory action. The USPS personnel responsible for the change in pay status, Davila–Brownlee, did not know about plaintiff's prior EEO activity. Plaintiff has not pointed to other evidence of a nexus between the decision to reduce her pay and her prior EEO activity. Therefore, defen-

dant is entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 44) filed January 20, 2004 be and hereby is **SUSTAINED in part and OVERRULED in part.** Plaintiff's claims that defendant discriminated against her on the bases of race and sex remain for trial. Defendant is entitled to summary judgment on all other claims.